UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60067-CR-SINGHAL/SNOW(s)

UNITED STATES OF AMERICA

vs.

**PAUL NICHOLAS MILLER,**

      **Defendant.**

_____/

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

The government submits this memorandum to (1) advise the Court of the basis for the government's sentencing recommendation; and (2) respond to Defendant Paul Nicholas Miller's Motion for Downward Variance (DE 42) and Objections and Clarifications to the Pre-Sentence Investigation Report (DE 43). For the reasons below, the Court should overrule Miller's objections and sentence Miller to 46 months' imprisonment, at the high end of the advisory guidelines range, followed by a three-year term of supervised release.

## FACTS

This case began with an indictment (DE 1) charging Miller, who had previously been convicted of aggravated assault and multiple drug offenses in New Jersey, with unlawfully possessing a firearm in 2018. Despite knowing of his felony convictions, Miller traveled from New Jersey to Fort Lauderdale to take a firearms training class, during which he fired a handgun. Miller then used the certificate of completion from that class to apply for a Florida concealed weapons license. (Presentence Investigation Report ("PSI") ¶ 6). Miller falsely affirmed in his application that he had never been convicted of a felony offense. (PSI ¶ 6). After authorities discovered this

lie, Miller received a letter denying his application. The letter cited and enumerated Miller's felony convictions in explaining the denial. (PSI ¶¶ 6, 11).

Before Miller's indictment in February 2021, the Federal Bureau of Investigation ("FBI") had begun monitoring Miller's internet presence after receiving multiple civilian complaints that Miller had threatened them with violence online. The FBI learned that Miller regularly livestreamed to thousands of social media followers wearing various outfits, such as Nazi regalia and a bulletproof vest, while brandishing what appeared to be knives or firearms. (PSI ¶ 62). During the livestreams, Miller typically entered video chats with strangers whom he deemed undesirable before making graphic threats of violence and hurling other invective. (Transcript of March 10, 2021 Detention Hearing, DE 29 at 28:13 – 36:18). Miller also appeared in videos posted to his social media channels in which he directed similarly confrontational verbal abuse towards individuals in person in public places. (DE 29 at 33:19 – 34:2). And Miller encouraged his many thousands of social media followers to harass perceived ideological enemies online. (DE 29 at 34:3 – 35:4). The central themes of Miller's internet presence were his white supremacist ideology, his advocacy for a second American civil war, his wish for the collapse of the existing order, and his hope for a bloody reordering that would result in the implementation of his preferred hierarchy. (PSI ¶ 62; DE 29 at 31:11 - 32:4). Miller was committed enough to these precepts that he mused in a video posted to his social media soon after the Capitol Riot about becoming a martyr if arrested:

> "I don't see any reason for them to come for me for any reason. But if they do for some reason, as I said before, it's not going to stop anything. **It's just going to kind of accelerate it more, and more, and more and it's going to kind of radicalize a lot of people if they do it.** So it's all up in the air, but I'm all right."

(DE 29 at 35:10-17) (emphasis added).

In this context, on March 2, 2021, an FBI Special Weapons and Tactics ("SWAT") team went to Miller's home in Fort Lauderdale to execute the federal arrest warrant issued in connection with the indictment. Miller emerged from his home before retreating inside. (PSI ¶ 8). After the SWAT team used stun grenades to clear the home, Miller—the only person inside—reemerged and surrendered. Inside Miller's home, authorities executed a federal search warrant and found an arsenal consistent with Miller's advocacy: an unregistered short-barreled rifle, a handgun, a combat knife, a tactical vest with plated body armor inserts, 787 rounds of high-caliber rifle ammunition, and 61 rounds of 9 millimeter ammunition. (PSI ¶ 8-10; DE 29 at 25:3-6).

After his arrest, Miller admitted to taking the 2018 firearms training and to seeking the Florida concealed weapon license despite his earlier felony convictions, which he downplayed as occurring many years ago in a different state. (PSI ¶ 11). He admitted that he had purchased the ammunition and firearms parts the FBI found in his home in 2021 at gun shows and assembled the firearms using YouTube tutorials. (PSI ¶ 11). He confirmed that he had become interested in building firearms because he thought it was an important skill to have given the impending collapse of American society. (PSI ¶¶ 11-12). He also admitted to his internet presence but characterized it as comedy that he intended to monetize rather than to act upon. (PSI ¶ 12). Nevertheless, Miller implied that his sympathizers would act in his defense, telling agents that when his "45,000" followers "hear about this, it is going to be really wild." (DE 29 at 35:18-21). Miller also questioned the seriousness of his offenses and expressed disbelief at his prosecution. (PSI ¶ 14).

In March 2021, a grand jury returned the superseding indictment, which charged Miller's 2021 possession of the ammunition and short-barreled rifle in his home the day he was arrested, in addition to his 2018 crime. (DE 13). Miller pled guilty to all three counts of the superseding indictment during a virtual hearing repeatedly interrupted by individuals making the same kinds

of racially charged statements Miller regularly made online before his arrest. (DE 35).

The day of the change of plea hearing, video clips of the proceeding appeared—and as of the time of this filing, remain—on a Twitter page for @ip2always.[1] The same day, on the same Twitter page, a two-minute video[2] of an apparent video call Miller made from prison appeared, along with a link to a YouTube video featuring a longer recording.[3] The two-minute video, which also remains publicly accessible on Twitter as of the time of this filing, includes Miller's prediction that "if everything goes well, I'll serve around 18 months[,]" less than half the low-end of the advisory guidelines range. Law enforcement also preserved the video that had originally appeared on YouTube, which has since been removed. The YouTube video is about 11 minutes long and includes the two-minute portion that remains publicly accessible on the @ip2always Twitter page.[4] The YouTube video includes Miller's further predictions of a sentence well below the advisory guidelines, Miller's instructions to the other person on the call about communicating to internet followers on a reconstituted social media chat, Miller's characterization of himself as a "political prisoner," and Miller's lamentation that "my life has been ruined. You know, I was trying to do everything I could for us, trying to help our cause, trying to help our people, and they just destroyed my life man. They just destroyed everything."

Absent from these candid videos is any acknowledgment of the crimes to which Miller pled guilty or any expression of remorse or personal accountability. Miller nevertheless asks the Court to vindicate his prediction and impose a below-guidelines sentence. (DE 42; 43).

---

[1] https://twitter.com/ip2always/status/1407470056485834756 (last accessed Aug. 23, 2021).

[2] https://twitter.com/ip2always/status/1407333997726818309 (last accessed Aug. 23, 2021).

[3] https://twitter.com/ip2always/status/1407373568703451137 (last accessed Aug. 23, 2021).

[4] The government intends to play this video at sentencing.

## ARGUMENT

Applying 18 U.S.C. § 3553(a)(1), the Court should decline Miller's invitation to ignore his history and characteristics and the nature and circumstances of his offenses. Further, applying 18 U.S.C. § 3553(a)(2) and considering Miller's ongoing minimization of his crimes, the Court should impose a sentence at the high end of the advisory guidelines range: 46 months' imprisonment and three years' supervised release.

**A. Section 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the Defendant**

Miller raises a single unfounded objection to the PSI: the "inclusion of those parts of paragraphs 12, 14 and paragraphs 62, 63, 64 and 65 . . . which detail the defendants alleged involvement in white supremacist ideologies." (DE 43 at 1 ¶ 2). The facts in these paragraphs pertain to the history and characteristics of the Defendant, which the Court must consider in fashioning a sentence. 18 U.S.C. § 3553(a)(1). Further, these facts bear directly on the nature and circumstances of Miller's offenses, which the Court also must consider. *Id*. As Miller himself acknowledges (DE 43 at 1 ¶ 2), his extreme beliefs explain his dogged pursuit of firearms and ammunition.

Notably, Miller does not dispute that he was regularly calling for civil war and ideological violence in a manner which explains and contextualizes both the threats he claims to have received and his unlawful possession of firearms and ammunition. Instead, he blames both his beliefs and his crimes on others: "right wing media reports and personal experiences which led to his actions in this case concerning his possession of weapons for self-defense purposes[.]" (DE 42 at 2).[5] This

---

[5] Miller claims self-defense while urging the Court to ignore the deliberately contentious and provocative nature of his online presence. (PSI ¶¶ 64-65). Miller also admitted in his post-*Miranda* statement that he came to South Florida months before his arrest in part because he believed Florida to be more permissive than his home state of New Jersey. (DE 29 at 25:23-25).

deflection reflects Miller's posture since the inception of this case: minimization of his crimes in favor of an alternate narrative in which he is the true victim.

This posture is particularly striking given the stark facts present here. After sustaining multiple felony convictions in New Jersey, Miller traveled to Florida to fire a gun, and then lied about his felon status to obtain a Florida concealed weapon license. That effort failed when Miller received a denial letter confirming his felony convictions. After receiving that letter, and in plain disregard for the law, Miller traveled to gun shows to buy ammunition and firearms parts and scoured the internet to teach himself to build firearms. He stockpiled this cache while self-employed as an influential internet provocateur calling for ideological violence and civil war while threatening strangers with extreme violence. One of the firearms he bought and assembled was a dangerous short-barreled rife regulated under the National Firearms Act. When federal agents arrived at Miller's home, he retreated inside, where he stored his weapons, rather than surrendering immediately.

After his arrest, Miller suggested to law enforcement that he could leverage his internet followers. Then, even as he was deciding to plead guilty, Miller did not express remorse, but instead tried to cast his crimes as heroic acts and himself as a martyr "trying to do everything I could for us, trying to help our cause, trying to help our people." In these unique respects, this case deviates from other firearms prosecution, warranting a significant sentence.

**B. The section 3553(a)(2) factors counsel a high end advisory guidelines sentence**

Miller's disregard for the seriousness of his crimes demonstrates the need for the Court to impose a sentence that fosters respect for the law. 18 U.S.C. § 3553(a)(2)(A). The sentence must also afford adequate specific deterrence to Miller and general deterrence to others who may wish to possess weapons unlawfully, especially when accompanied by regular public calls for civil war

and specific threats of extreme violence. 18 U.S.C. § 3553(a)(2)(B). Further, Miller's characterization of himself as a "political prisoner" suggests an intention to resume the actions for which he is incarcerated after his release. The sentence must therefore also reflect the need to protect the public from Miller's further crimes. 18 U.S.C. § 3553(a)(2)(C). Finally, the sentence must reflect the need for Miller to receive the types of mental health and substance abuse treatment available to him in federal custody. 18 U.S.C. § 3553(a)(2)(D).

A sentence at the high end of the guidelines is the only sentence sufficient to achieve the goals of the statutory framework. The government acknowledges the difficulty associated with Miller's parents' medical conditions. But Miller committed his crimes in South Florida, where he chose to live away from family to build his career as an internet ideologue. His objection to the PSI notwithstanding, Miller has tried since his arrest to project a warped narrative to the public and to his online followers: that his extreme views somehow excuse his criminal conduct. In fact, the opposite is true: Miller's views were a disconcerting backdrop for the crimes he committed.

## CONCLUSION

For the reasons above, the Court should overrule Miller's objections to the PSI sentence Miller to 46 months' imprisonment, followed by three years' supervised release.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By:    */s/ Kiran N. Bhat*
      Kiran N. Bhat
      Assistant United States Attorney
      Florida Bar No. 1008370
      99 NE 4th Street
      Miami, Florida 33132-2111
      Phone: (305) 961-9103
      Email: Kiran.Bhat@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Kiran N. Bhat*
Kiran N. Bhat
Assistant United States Attorney