UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cr-60067-AHS

UNITED STATES OF AMERICA,

                                  Fort Lauderdale, Florida

             Plaintiff,

                                December 3, 2025

    vs.                             12:04 p.m. - 12:28 p.m.

PAUL NICHOLAS MILLER,

               Defendant.
-----------------------------------------------------------

MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE
BEFORE THE HONORABLE RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:       CAMILLE SMITH, AUSA
                       U.S. ATTORNEY'S OFFICE
                       500 E. Broward Boulevard, Suite 700
                       Fort Lauderdale, Florida 33394
                       Email: camille.smith@usdoj.gov


FOR THE DEFENDANT:       MARK COSTELLO
                       THE COSTELLO LAW FIRM
                       1 East Broward Boulevard
                       Suite 700
                       Fort Lauderdale, Florida 33301
                       Email: Markcostelloesq@gmail.com




**STENOGRAPHICALLY
REPORTED BY:**             **SHAMELLE "SHELLY" KELLEY, CCR, RPR
Federal Official Court Reporter
United States District Court
400 N. Miami Avenue, 9th Floor South
Miami, Florida 33128
shamelle_kelley@flsd.uscourts.gov**

**\*\*\* \*\*\* \*\*\* \*\*\* \*\*\***

P R O C E E D I N G S

THE COURT:  Okay.  Folks, we are here on United States of America v. Paul Nicholas Miller.  It's a motion for early termination of supervised release, and let me just get appearances first for the government, and then we'll go from there.

MS. SMITH:  Good morning, Your Honor.  AUSA Camille Smith standing in for AUSA Anthony Reynolds on behalf of the government.

THE COURT:  Nice to see you.

MS. SMITH:  You as well, Your Honor.

MR. COSTELLO:  Good morning, Your Honor, Mark Costello, of the Costello Law Firm, P.A. on behalf of Mr. Paul Nicholas Miller.

THE COURT:  Good to see you, Mr. Costello.

MR. COSTELLO:  You too, Your Honor.

THE COURT:  You know, I'd say for the purposes of this hearing, you all -- I appreciate the formality, you don't have to stand.  Just move the microphones closer, and that way you don't have to worry.

On this case, Mr. Costello filed at docket entry 80, a waiver of personal appearance.  I appreciate that.  It's a thorough waiver.  Some of the waivers I get aren't all that thorough, so this is very good, so I appreciate it.

MR. COSTELLO:  No, I wanted to be prepared, Your

Honor.

THE COURT:  No, no.  It's all good.

MR. COSTELLO:  I apologize for the late filing.

THE COURT:  No, no.  No worry.  It brings up a couple of good points though, but let's just -- let's talk about the case a little bit.  I sentenced Mr. Miller a long time ago.  I think this was during COVID when this sentencing happened.  At least I remember part of the case was on Zoom, but I think the sentencing was in person.  Something like that.

But in any case, what we're here for, Mr. Costello, you had filed a motion for early termination of supervision. You had requested a hearing.  I really don't often give hearings on these, but I certainly wanted to hear from you based on your request.  And it was a fairly unusual case in terms of when it first all came up.

I do have the papers that you filed, and I have the papers from the government as well objecting, and then I have your reply to that.

But let's talk about it a little bit.

What's your thought, number one?

And number two, is there something in particular, some impediment, in terms of being on supervision, that's really keeping him from doing certain things he wants to do?

MR. COSTELLO:  Sure, Your Honor.  As I stated in my

motion providing the exhibits itself, my client is taking care of his father as a caregiver.  His father has three stints in his heart, a micro fracture in his hip, diabetes, and he can't care for himself due to his age.

He's currently 72 years old.  He is -- my client is currently on probation, and he has been able to take care of his father; however, there have been times where there have been emergency circumstances that have prevented him from being able to take his father out of state or for other medical issues.

I understand that his probation officer has allowed him to travel for his father, but he still has to request permission to do that, and at times it could be an emergency circumstance, which potentially, because of his father's condition, could be life or death.

So my client, originally when he filed his initial motion for termination of probation based on the same reasons back in, I believe, January of 2024, the government advised that my client didn't have any proof that he was taking care of his father at that time, and that's why it should be denied.  I understand that Your Honor had denied the motion to self-terminate probation.  Whether it's based on that or not, it was still denied, and that's what the government had stated.

Today, we are filing our motion with proof that he

is taking care of his father.  I understand that the government is still objecting to this because mere compliance should not be enough, but we're not stating that it's just mere compliance.  Don't get me wrong, my client has not had any violations of probation, he hasn't had any issues with probation.  He's been fully compliant and respectful of the Court and probation itself.

So he has been compliant, but the additional factor of his father and being a caretaker for his father, we believe, rises the elements to possibly having this terminated.

I understand that the law allows for the Court to do that as long as it is just and fair, and at this point in time, Your Honor, we are requesting for the probation to be terminated.

And besides that, I understand that probation is going to be terminated in July of 2026, but he has been fully compliant at this time, and my client's father is not getting better.  He can't take care of himself.  Every day he gets worse.  We fear that in that time, potentially even within the six or seven months, something could happen that could easily be prevented by terminating this.

And in addition to that, Your Honor, he hasn't violated any law, he hasn't done anything wrong throughout the time of his probation.

I understand the government also referenced his comedy or comedic show where he portrays himself as the Joker. Your Honor, he is just a comedian. It's just satirical, entertainment purposes there, and he actually gets paid for it. That's his employment. So I really don't understand how that could be a factor in to not allowing for termination of probation.

It really should just be in the interest of justice and the fact that he's been compliant, and now obviously we have proof that his father has been sick, and he's been sick throughout this whole time since the initial -- prior to the initial termination of probation motion that was filed by Mr. Michael Cohen previously.

So, again, that's why we're requesting this, Your Honor.

THE COURT: Understood.

MR. COSTELLO: Oh, okay. I apologize. I filed the request for hearing because we had filed this motion back in July and there had not been an order issued on it, and timeliness and everything happening, I just wanted to make sure that my client was properly protected and an order was issued on this.

THE COURT: Understood.

Ms. Smith?

MS. SMITH: Your Honor, I'm really adopting AUSA

Reynolds' motion, and he filed a comprehensive response citing the multiple reasons for objections.

Just to kind of summarize everything.  Your Honor, as you're aware, Your Honor's determination is dependent on both the defendant's conduct and what's in the interest of justice.

Essentially, the only impediment, it appears, is that the defendant wants greater autonomy and flexibility to be able to care for his father.  The entirety of supervised release, it's -- and the -- essentially it's contradiction to ask for more flexibility while you're on supervised release. By very nature, supervised release is an alternative to incarceration that this Court considered when this Court sentenced him back in 2021 to 3 years of supervised release.

I've spoken to the in-court probation representative who has communicated with the probation officer, John Almanza, A-L-M-A-N-Z-A.  It's my understanding that he's on standby if the Court needed to speak with him.

THE COURT:   He's in New Jersey?

MS. SMITH:  I believe he's in New Jersey, yes, Your Honor.  But it's my understanding there has been no time where he's been denied access to see his father.  Of course the medical issues as they are, are unpredictable, and I understand that that is an impediment that he has to request permission, but again, that's the nature of supervised

release.

Being on supervised release will have some inconveniences, and that is just based on the fact that he was sentenced to supervised release, and he now has to deal with those minor inconveniences.

Considering everything in totality, Your Honor, his mere compliance, the fact that time has passed is not in and off itself enough for this Court to terminate probation.  A minor inconvenience is not in and of itself for this Court to terminate probation.

And so we look at what has been happening, and you -- defense wants you to take into consideration his father and that issue with his father's medical care.

The government wants you to take into consideration the defendant's conduct, and the defendant's conduct includes those videos.  Whether or not they're protected by First Amendment is not the issue.  It's the fact that in his time, he chooses to spew hate and vitriol on the internet.  That is a factor for this Court to consider.  Not to punish the defendant but to consider his conduct and whether or not society would be impacted and whether it's in the interest of justice to terminate his probation.

So given the factor that supervised release is inconvenient in and of itself, but it's a part of his initial punishment that this Court considered back in 2020 and imposed

then, the fact that his mere compliance to probation, he should not be rewarded for that.  Other individuals are in the same situation that they comply with the terms that they're given.  They're not rewarded for that.  It's expected.  And it's the minimum bar.

He has done nothing superior outside of just mere compliance.  And the passage of time between his last motion and the current motion, again, nothing has occurred between those times so the government maintains its objection based on the totality of circumstances.

THE COURT:  When you're referencing videos in your argument, you're specifically talking about the ones that are described in the full paragraph on page 5 of your opposition at docket entry 74?

MS. SMITH:  Yes, Your Honor.  It's my understanding defense has seen these videos as well.  They are adequately described in the motion, but I do have the videos if Your Honor were interested in watching those as well.

THE COURT:  Okay.  So let's talk about it a little bit.

MR. COSTELLO:  If I may, Your Honor?

Your Honor, I understand that the government's argument is that the videos and conduct; however, that's protected speech.

THE COURT:  No.  Absolutely not.

MR. COSTELLO:  Well, he's not inciting violence, Your Honor.  He's a comedian, and it's just a satirical pursuit for entertainment purposes.

THE COURT:  So, you know, the protected speech arguments that I hear from both sides, I just don't know where they come from.

When someone's on supervision, their constitutional rights are different than when they're not.  So, as an example, if I'm on probation, a probation officer can come and search my house without a warrant.  I don't get to say, "Wait. That's a Fourth Amendment violation."

It's completely different than when someone comes before the Court and is asking for early termination of supervision, which isn't a constitutional right, it's a privilege based on exceptional conduct.

And so I want to talk about this a little bit.

So in the Florida State Court system, you have early termination as a matter of right on supervision once you've completed half your term.  Exceptions include sex crimes and things like that.

In the federal system, you're prohibited from early termination unless you've completed half.  So it's not as a matter of right, it's a threshold.

The issue though is an interesting one, and, Mr. Costello, I think you've hit the nail on the head in terms

of how is the law changing on early terminations and how is the law changing on probation in general, and it's governed at least in some part by the Supreme Court's decision on that probation case talking about the 3583 factors, and probation is not supposed to be punishment, the incarceration part is, and so -- and when I say "probation," I'm using probation and supervised release interchangeably, so I apologize.

But I think you're a very good lawyer for raising this, and I probably shouldn't have cut you off the way I did, but there's a difference between an individual's First Amendment rights, in my mind, when they're on supervision, versus when they're not.  And I may be wrong.  I may be wrong on that.

But I guess what you're saying is what's described in the full paragraph on page 5, at docket entry 74 is your client's effort at humor, and that's his job.  But I just don't understand how this puts him among the group of exceptional probationers or exceptional supervised release people, which in my mind have been, for example, I sentenced someone, and they owe half a million dollars in restitution, and they actually pay it off.  That's someone I've granted early termination to.

We had an individual who, while on probation, or while on supervised release, there's an accident on 95, and he saved someone's life by pulling her out of a fire.

Exceptional.

That's -- that's the way that I look at it in the sense that the conditions of supervised release in essence are how you, me and Ms. Smith live our every day lives.

The issue though, that I have, and I'm very willing to grant relief on this, is that if there's something that will help that is not there in terms of taking care of his father, some order I could sign that says he's entitled certain things in terms of that, I'm happy to sign that. I don't want him to have any stress that in the middle of the night, if his father is having a medical episode, he can't take his father for medical treatment. That's not the intention of this at all.

MR. COSTELLO: I appreciate that, Your Honor.

THE COURT: I just need -- and I'm not focusing on him. I just need people on supervised release who want to be termed early, I just need them to be exceptional, not they've fully complied with the law.

I understand where you're coming from, because in our line of work, in our line of business, you've got people that violate and people that don't, so reward the people that don't, and I understand that. I sat in that chair for almost 20 years. I mean, believe me, I understand.

I just -- I'm just not seeing it. That's all.

MR. COSTELLO: I understand, Your Honor. And I know

it's the videos.  However, it's just a satirical character. It's not his actual persona.  I'm sure that if you spoke with his probation officer or whoever, they'll be able to attest to that.

Everybody that has ever dealt with my client has never had any kind of issue.  The racially-motivated anything is just an act, and all for entertainment purposes alone via social media, and it's how he makes his money as well.  He's completely changed his life.

He's not, I understand, by the law, he hasn't violated his probation.  He's taking care of his father, who is not doing the best right now and is getting worse.  While he was incarcerated, he lost his mother, so this is his only parent left, and he's having a really hard time with it.

On top of that, with his employment, one of the things that he was denied for was travel outside of the country, because of the fact that he was employed by an international company for his entertainment and comedic services, and he had requested to travel outside of the country, but they said no, but it was related to his employment.

So that's also one of the reasons why we are requesting, in addition to the other factors as well, to terminate the probation, because it's preventing him from being able to make the money he should be making, and doing

the things he should be doing as an entertainer, as a comedian, especially in the position he's in.  He's not, I understand, by the law, he hasn't violated his probation. He's taking care of his father, who is not doing the best right now and is getting worse.  While he was incarcerated, he lost his mother, so this is his only parent left, and he's having a really hard time with it.

On top of that, with his employment, one of the things that he was denied for was travel outside of the country, because of the fact that he was employed by an international company for his entertainment and comedic services.  And he had requested to travel outside of the country, but they said no, but it was related to his employment.

So that's also one of the reasons why we are requesting, in addition to the other factors as well, to terminate the probation, because it's preventing him from being able to make the money he should be making and doing the things he should be doing as an entertainer, as a comedian, especially in the position he's in.

He's in a very unique position with what he does.  I understand it might not be for the taste of many people, or some, or most, or whatever, but it is his business, it is his employment itself, and the probation is preventing him from doing what he needs to do, not promote violence, but to grow

as an entertainer, and perhaps it could even expand beyond whatever the critique or commentary is today, but he can't do that where he is now.  Everything is confined in his room.

THE COURT:  Well, I'll tell you this:  He's done 29 of 36 months.

MR. COSTELLO:  Yes.

THE COURT:  I mean, he's done a significant portion.

If, to the extent that he has a situation where he now wants to travel abroad for work purposes, or anything like that, I'll sign off on it.  If he, for any medical care for his father, if he needs to travel, I'll sign off on it.  I will definitely step down several restrictions that you've identified, in the sense -- well, those two restrictions that I'm hearing.

MR. COSTELLO:  Sure.

THE COURT:  Well, those are the main ones.

MR. COSTELLO:  Yeah.

THE COURT:  You just -- what I would want you to do, as soon as he knows he has to travel abroad, just let Mr. Reynolds and probation know, get me an order, and, I mean, I sign off on these orders all the time.  I'm willing to do it for him.

MR. COSTELLO:  Okay.  But, Your Honor, if you're willing to do that and to lower the restrictions for his father, why not terminate the probation?  It's only six months

left, Your Honor.

THE COURT:  Because -- and I will tell you, because I get these motions on hundreds of cases, and I've got to have some guidelines, and my guidelines are based on course of practice and the law, and truly on people who are exceptional versus just following the rules.  That's really my guidelines.

MR. COSTELLO:  I understand.

THE COURT:  And I have no problem at all if you're able to show me I'm wrong.  I will tell you that, unlike many judges, I will admit that I'm wrong all day long, and I've heard that at home, that I'm wrong.

MR. COSTELLO:  I hear that as well at home, Your Honor.

THE COURT:  That's how it is; right?

MR. COSTELLO:  I understand.

THE COURT:  And I do think -- I think it's actually a pretty user-friendly courtroom compared to other federal courtrooms.  So just speak with your client, see what the issues are, run them by Mr. Reynolds.  I'm not saying I'll sign off on everything, but the two you've identified, I'm willing to sign off on.

MR. COSTELLO:  In regards to international travel and then the care for his father, obviously throughout the United States, if he has to leave the country for his father, would that be an issue?

THE COURT:  I think he just needs to let probation know, and let the prosecutor know, and then let me know.  I mean, I would assume he's not going to need to leave the country for his father on an emergent basis in the middle of the night.

MR. COSTELLO:  Yeah.  I would hope for that but anything can happen in life.

THE COURT:  Let's say -- let me give you an example.  Let's say he finds out next week there's a miracle cure in London, and there are no beds available, and then three weeks from now he gets a call, "We have a bed available tomorrow.  You need to get your dad here by tomorrow," and it's midnight.  I would let him go.  But that's kind of coming up with a law school like example.

MR. COSTELLO:  Of course, just to have an idea.

THE COURT:  But yeah, we're there.  I want him to be able to properly care for his father, and I'm also willing to allow him to -- despite the fact that I don't think what's on page 5 is funny at all -- if that's his job, and that's humorous, and he has places in Europe where they think that's humorous, and he's got a gig, he can do it.

MR. COSTELLO:  I appreciate that, Your Honor.  Will that be in an order?

THE COURT:  I just need to you to talk with your client.

MR. COSTELLO:  Okay.

THE COURT:  Make sure and identify it as those things.  Run it by Mr. Reynolds.  So it would be kind of like a --

MR. COSTELLO:  A stipulation.

THE COURT:  Well, I won't say a stipulation because it's coming from me.  It would just be a motion and proposed order.

MR. COSTELLO:  Okay.

THE COURT:  But, you know, I mean, I think you get an idea of what I'm willing to sign off on.

MR. COSTELLO:  Yes, yes, yes.  And, of course, you can change it anyway you want, you know, when you receive it.

THE COURT:  Yeah, just send it over in Word, and I think --

MR. COSTELLO:  Email is fine, Your Honor?

THE COURT:  Yes.

MR. COSTELLO:  Okay.  Great.

THE COURT:  Listen, I appreciate it.  You know, again, Mr. Costello, you got a hearing and an argument, and you got a positive result on something that's pretty rare.  So I just want to make sure when you communicate with your client that he understands that you got him a positive result.

MR. COSTELLO:  I appreciate that, Your Honor.

THE COURT:  Thank you all, very much.

MS. SMITH:  Thank you, Your Honor.

MR. COSTELLO:  Your Honor, when should we have that motion and proposed order to you by?

THE COURT:  That's up to you, really.  You know, you've got to talk to him, go back and forth, there's no time limit.  What I will do is I will deny the motion for early termination, and I'll write, "Without prejudice.  Counsel to file a separate motion as to proposed modifications."

MR. COSTELLO:  Okay.  So just the order itself?

THE COURT:  Right.

MR. COSTELLO:  Thank you.

MS. SMITH:  Thank you, Your Honor.

(Concluded at 12:28 p.m.)


**C E R T I F I C A T E**

I, Shamelle D. Kelley, Registered Professional Reporter, do hereby certify that the foregoing is a true and correct transcript of the stenographically-reported proceedings.

Dated:  March 12, 2026          *s/Shamelle D. Kelley*

                                Shamelle D. Kelley, CCR, RPR
                                Federal Official Court Reporter

```
***                                                           dollars
```

**\***

**\*\*\***  (1:25)

**1**

**1**  (1:17)
**12**  (19:20)
**12:04**  (1:5)
**12:28**  (1:5)(19:13)

**2**

**20**  (12:23)
**2020**  (8:25)
**2021**  (7:14)
**2024**  (4:18)
**2025**  (1:5)
**2026**  (5:17)(19:20)
**21-cr-60067-AHS**  (1:2)
**29**  (15:4)

**3**

**3**  (1:5)(7:14)
**33128**  (1:24)
**33301**  (1:18)
**33394**  (1:13)
**3583**  (11:4)
**36**  (15:5)

**4**

**400**  (1:23)

**5**

**5**  (9:13)(11:15)
(17:19)
**500**  (1:13)

**7**

**700**  (1:13)(1:17)
**72**  (4:5)
**74**  (9:14)(11:15)

**8**

**80**  (2:21)

**9**

**95**  (11:24)
**9th**  (1:23)

**A**

**able**  (4:6)(4:9)(7:9)
(13:3)(13:25)(14:18)
(16:9)(17:17)
**abroad**  (15:9)(15:19)
**access**  (7:22)
**accident**  (11:24)
**act**  (13:7)
**actual**  (13:2)
**addition**  (5:23)
(13:23)(14:16)
**additional**  (5:8)
**adequately**  (9:16)
**admit**  (16:10)
**adopting**  (6:25)
**advised**  (4:18)

**age**  (4:4)
**ago**  (3:7)
**allow**  (17:18)
**allowed**  (4:11)
**allowing**  (6:6)
**allows**  (5:12)
**Almanza**  (7:16)
**A-L-M-A-N-Z-A**  (7:17)
**almost**  (12:22)
**alone**  (13:7)
**alternative**  (7:12)
**Amendment**  (8:17)
(10:11)(11:11)
**AMERICA**  (1:3)(2:3)
**among**  (11:17)
**Anthony**  (2:8)
**apologize**  (3:3)
(6:17)(11:7)
**appearance**  (2:22)
**APPEARANCES**  (1:11)
(2:5)
**appears**  (7:7)
**appreciate**  (2:18)
(2:22)(2:24)(12:14)
(17:22)(18:19)(18:24)
**aren't**  (2:23)
**argument**  (9:12)
(9:23)(18:20)
**arguments**  (10:5)
**assume**  (17:3)
**attest**  (13:3)
**ATTORNEY'S**  (1:12)
**AUSA**  (1:12)(2:7)
(2:8)(6:25)
**autonomy**  (7:8)
**available**  (17:10)
(17:11)
**Avenue**  (1:23)
**aware**  (7:4)

**B**

**bar**  (9:5)
**based**  (3:15)(4:17)
(4:22)(8:3)(9:9)
(10:15)(16:4)
**basis**  (17:4)
**bed**  (17:11)
**beds**  (17:10)
**behalf**  (2:8)(2:13)
**besides**  (5:16)
**best**  (13:12)(14:4)
**better**  (5:19)
**beyond**  (15:1)
**bit**  (3:6)(3:20)
(9:20)(10:16)
**Boulevard**  (1:13)
(1:17)
**brings**  (3:4)
**Broward**  (1:13)(1:17)
**business**  (12:20)
(14:23)

**C**

**call**  (17:11)

**came**  (3:16)
**CAMILLE**  (1:12)(1:14)
(2:7)
**care**  (4:1)(4:4)(4:6)
(4:19)(5:1)(5:19)
(7:9)(8:13)(12:7)
(13:11)(14:4)(15:10)
(16:23)(17:17)
**caregiver**  (4:2)
**caretaker**  (5:9)
**cases**  (16:3)
**CCR**  (1:22)(19:21)
**certain**  (3:24)(12:9)
**certainly**  (3:14)
**certify**  (19:17)
**chair**  (12:22)
**change**  (18:13)
**changed**  (13:9)
**changing**  (11:1)(11:2)
**character**  (13:1)
**chooses**  (8:18)
**circumstance**  (4:14)
**circumstances**  (4:8)
(9:10)
**citing**  (7:1)
**client**  (4:1)(4:5)
(4:16)(4:19)(5:4)
(6:21)(13:5)(16:18)
(17:25)(18:22)
**client's**  (5:18)
(11:16)
**closer**  (2:19)
**Cohen**  (6:13)
**com**  (1:18)
**comedian**  (6:3)(10:2)
(14:2)(14:19)
**comedic**  (6:2)(13:18)
(14:11)
**comedy**  (6:2)
**comes**  (10:12)
**coming**  (12:19)
(17:13)(18:7)
**commentary**  (15:2)
**communicate**  (18:22)
**communicated**  (7:16)
**compared**  (16:17)
**completed**  (10:19)
(10:22)
**completely**  (10:12)
(13:9)
**compliance**  (5:2)
(5:4)(8:7)(9:1)(9:7)
**compliant**  (5:6)(5:8)
(5:18)(6:9)
**complied**  (12:18)
**comply**  (9:3)
**comprehensive**  (7:1)
**Concluded**  (19:13)
**condition**  (4:15)
**conditions**  (12:3)
**conduct**  (7:5)(8:15)
(8:20)(9:23)(10:15)
**confined**  (15:3)
**consider**  (8:19)(8:20)

**consideration**  (8:12)
(8:14)
**considered**  (7:13)
(8:25)
**Considering**  (8:6)
**constitutional**
**contradiction**  (7:10)
**COSTELLO**  (1:16)
(2:12)(2:13)(2:15)
(2:16)(2:21)(2:25)
(3:3)(3:11)(3:25)
(6:17)(9:21)(10:1)
(10:25)(12:14)
(12:25)(15:6)(15:15)
(15:17)(15:23)(16:7)
(16:12)(16:15)
(16:22)(17:6)(17:15)
(17:22)(18:1)(18:5)
(18:9)(18:12)(18:16)
(18:18)(18:20)
(18:24)(19:2)(19:9)
(19:11)
**country**  (13:17)
(13:20)(14:10)
(14:13)(16:24)(17:4)
**couple**  (3:5)
**courtrooms**  (16:18)
**Court's**  (11:3)
**COVID**  (3:7)
**crimes**  (10:19)
**critique**  (15:2)
**cure**  (17:9)
**current**  (9:8)
**currently**  (4:5)(4:6)
**cut**  (11:9)

**D**

**dad**  (17:12)
**Dated**  (19:20)
**deal**  (8:4)
**dealt**  (13:5)
**death**  (4:15)
**December**  (1:5)
**defendant's**  (7:5)
(8:15)
**defense**  (8:12)(9:16)
**definitely**  (15:12)
**denied**  (4:21)(4:23)
(7:22)(13:16)(14:9)
**deny**  (19:6)
**dependent**  (7:4)
**described**  (9:13)
(9:17)(11:14)
**despite**  (17:18)
**determination**  (7:4)
**diabetes**  (4:3)
**difference**  (11:10)
**different**  (10:8)
(10:12)
**DISTRICT**  (1:1)(1:9)
(1:23)
**docket**  (2:21)(9:14)
(11:15)
**dollars**  (11:20)

Shelly Kelley, CCR, RPR - Shamelle_Kelley@flsd.uscourts.gov

due                                                                                              minor

**due** (4:4)
**during** (3:7)

### E

**EARLY** (1:8)(2:4)
(3:12)(10:13)(10:17)
(10:21)(11:1)(11:22)
(12:17)(19:6)
**easily** (5:21)
**East** (1:17)
**effort** (11:16)
**elements** (5:10)
**Email** (1:14)(1:18)
(18:16)
**emergency** (4:8)(4:13)
**emergent** (17:4)
**employment** (6:5)
(13:15)(13:21)(14:8)
(14:14)(14:24)
**entertainer** (14:1)
(14:19)(15:1)
**entertainment** (6:4)
(10:3)(13:7)(13:18)
(14:11)
**entirety** (7:9)
**entitled** (12:8)
**entry** (2:21)(9:14)
(11:15)
**episode** (12:11)
**especially** (14:2)
(14:20)
**essence** (12:3)
**Essentially** (7:7)
(7:10)
**Europe** (17:20)
**even** (5:20)(15:1)
**example** (10:9)
(11:19)(17:8)(17:14)
**exceptional** (10:15)
(11:18)(12:1)(12:17)
(16:5)
**Exceptions** (10:19)
**exhibits** (4:1)
**expand** (15:1)
**expected** (9:4)

### F

**factors** (11:4)
(13:23)(14:16)
**father** (4:2)(4:7)
(4:9)(4:12)(4:20)
(5:1)(5:9)(5:18)
(6:10)(7:9)(7:22)
(8:12)(12:8)(12:11)
(12:12)(13:11)(14:4)
(15:11)(15:25)
(16:23)(16:24)(17:4)
(17:17)
**father's** (4:14)(8:13)
**fear** (5:20)
**Federal** (1:22)
(10:21)(16:17)(19:22)
**file** (19:8)
**filed** (2:21)(3:12)

(3:17)(4:16)(6:12)
(6:17)(6:18)(7:1)
**filing** (3:3)(4:25)
**finds** (17:9)
**fine** (18:16)
**fire** (11:25)
**FIRM** (1:16)(2:13)
**flexibility** (7:8)
(7:11)
**Floor** (1:23)
**FLORIDA** (1:1)(1:4)
(1:13)(1:18)(1:24)
(10:17)
**flsd** (1:24)
**focusing** (12:15)
**following** (16:6)
**foregoing** (19:17)
**formality** (2:18)
**Fort** (1:4)(1:13)
(1:18)
**forth** (19:5)
**Fourth** (10:11)
**fracture** (4:3)
**full** (9:13)(11:15)
**fully** (5:6)(5:17)
(12:18)
**funny** (17:19)

### G

**general** (11:2)
**gets** (5:19)(6:4)
(17:11)
**getting** (5:18)
(13:12)(14:5)
**gig** (17:21)
**gmail** (1:18)
**gov** (1:14)(1:24)
**governed** (11:2)
**government** (2:5)
(2:9)(3:18)(4:18)
(4:23)(5:2)(6:1)
(8:14)(9:9)
**government's** (9:22)
**grant** (12:6)
**granted** (11:21)
**Great** (18:18)
**greater** (7:8)
**group** (11:17)
**grow** (14:25)
**guess** (11:14)
**guidelines** (16:4)
(16:6)

### H

**half** (10:19)(10:22)
(11:20)
**happen** (5:21)(17:7)
**happened** (3:8)
**happening** (6:20)
(8:11)
**happy** (12:9)
**hard** (13:14)(14:7)
**hasn't** (5:5)(5:23)
(5:24)(13:10)(14:3)

**hate** (8:18)
**head** (10:25)
**hearing** (2:18)(3:13)
(6:18)(15:14)(18:20)
**hearings** (3:14)
**heart** (4:3)
**help** (12:7)
**hereby** (19:17)
**himself** (4:4)(5:19)
(6:2)
**hip** (4:3)
**hit** (10:25)
**home** (16:11)(16:12)
**Honor's** (7:4)
**hope** (17:6)
**house** (10:10)
**however** (4:7)(9:23)
(13:1)
**humor** (11:16)
**humorous** (17:20)
(17:21)
**hundreds** (16:3)

### I

**I'd** (2:17)
**idea** (17:15)(18:11)
**identified** (15:13)
(16:20)
**identify** (18:2)
**impacted** (8:21)
**impediment** (3:23)
(7:7)(7:24)
**imposed** (8:25)
**incarcerated** (13:13)
(14:5)
**incarceration** (7:13)
(11:5)
**inciting** (10:1)
**include** (10:19)
**includes** (8:15)
**inconvenience** (8:9)
**inconveniences** (8:3)
(8:5)
**inconvenient** (8:24)
**in-court** (7:15)
**individuals** (9:2)
**individual's** (11:10)
**initial** (4:16)(6:11)
(6:12)(8:24)
**intention** (12:13)
**interchangeably**
**interest** (6:8)(7:5)
(8:21)
**interested** (9:18)
**interesting** (10:24)
**international**
**internet** (8:18)
**into** (8:12)(8:14)
**isn't** (10:14)
**issued** (6:19)(6:22)
**its** (9:9)
**itself** (4:1)(5:7)
(8:8)(8:9)(8:24)
(14:24)(19:9)

### J

**January** (4:18)
**Jersey** (7:19)(7:20)
**job** (11:16)(17:19)
**John** (7:16)
**Joker** (6:2)
**judges** (16:10)
**July** (5:17)(6:19)
**justice** (6:8)(7:6)
(8:22)

### K

**keeping** (3:24)
**KELLEY** (1:22)(1:24)
(19:16)(19:20)(19:21)
**knows** (15:19)

### L

**last** (9:7)
**late** (3:3)
**Lauderdale** (1:4)
(1:13)(1:18)
**least** (3:8)(11:3)
**leave** (16:24)(17:3)
**left** (13:14)(14:6)
(16:1)
**life** (4:15)(11:25)
(13:9)(17:7)
**limit** (19:6)
**line** (12:20)
**little** (3:6)(3:20)
(9:19)(10:16)
**live** (12:4)
**lives** (12:4)
**London** (17:10)
**look** (8:11)(12:2)
**lost** (13:13)(14:6)
**lower** (15:24)

### M

**main** (15:16)
**maintains** (9:9)
**March** (19:20)
**MARK** (1:16)(2:12)
**Markcostelloesq**
**media** (13:8)
**medical** (4:10)(7:23)
(8:13)(12:11)(12:12)
(15:10)
**mere** (5:2)(5:4)(8:7)
(9:1)(9:6)
**Miami** (1:23)(1:24)
**Michael** (6:13)
**micro** (4:3)
**microphones** (2:19)
**middle** (12:10)(17:4)
**midnight** (17:12)
**MILLER** (1:6)(2:3)
(2:14)(3:6)
**million** (11:20)
**mind** (11:11)(11:19)
**minimum** (9:5)
**minor** (8:5)(8:9)

miracle                                                                                      stated

| | | | |
|---|---|---|---|
| miracle (17:9) | paid (6:4) | proposed (18:7) | **S** |
| modifications (19:8) | papers (3:17)(3:18) | (19:3)(19:8) | |
| money (13:8)(13:25) | paragraph (9:13) | prosecutor (17:2) | s/Shamelle (19:20) |
| (14:18) | (11:15) | protected (6:21) | sat (12:22) |
| months (5:21)(15:5) | parent (13:14)(14:6) | (8:16)(9:24)(10:4) | satirical (6:3) |
| (15:25) | part (3:8)(8:24) | providing (4:1) | (10:2)(13:1) |
| mother (13:13)(14:6) | (11:3)(11:5) | pulling (11:25) | saved (11:25) |
| MOTION (1:8)(2:3) | particular (3:22) | punish (8:19) | saying (11:14)(16:19) |
| (3:12)(4:1)(4:17) | passage (9:7) | punishment (8:25) | says (12:8) |
| (4:21)(4:25)(6:12) | passed (8:7) | (11:5) | school (17:14) |
| (6:18)(7:1)(9:7) | PAUL (1:6)(2:3)(2:13) | purposes (2:17)(6:4) | search (10:10) |
| (9:8)(9:17)(18:7) | pay (11:21) | (10:3)(13:7)(15:9) | seeing (12:24) |
| (19:3)(19:6)(19:8) | perhaps (15:1) | pursuit (10:3) | seen (9:16) |
| motions (16:3) | permission (4:13) | puts (11:17) | self-terminate (4:22) |
| move (2:19) | (7:25) | | send (18:14) |
| multiple (7:2) | person (3:9) | **R** | sense (12:3)(15:13) |
| | persona (13:2) | | sentenced (3:6) |
| **N** | personal (2:22) | RAAG (1:9) | (7:14)(8:4)(11:19) |
| | places (17:20) | racially-motivated | sentencing (3:7)(3:9) |
| nail (10:25) | Plaintiff (1:4)(1:12) | raising (11:8) | separate (19:8) |
| nature (7:12)(7:25) | point (5:13) | rare (18:21) | services (13:19) |
| needed (7:18) | points (3:5) | reasons (4:17)(7:2) | (14:12) |
| needs (14:25)(15:11) | portion (15:7) | (13:22)(14:15) | seven (5:21) |
| (17:1) | portrays (6:2) | receive (18:13) | several (15:12) |
| never (13:6) | position (14:2) | referenced (6:1) | sex (10:19) |
| New (7:19)(7:20) | (14:20)(14:21) | referencing (9:11) | SHAMELLE (1:22) |
| Nice (2:10) | positive (18:21) | regards (16:22) | (1:24)(19:16)(19:21) |
| NICHOLAS (1:6)(2:3) | (18:23) | Registered (19:16) | SHELLY (1:22) |
| (2:14) | possibly (5:10) | related (13:20) | shouldn't (11:9) |
| night (12:11)(17:5) | potentially (4:14) | (14:13) | show (6:2)(16:9) |
| number (3:21)(3:22) | (5:20) | RELEASE (1:8)(2:4) | sick (6:10) |
| | practice (16:5) | (7:10)(7:11)(7:12) | sides (10:5) |
| **O** | prejudice (19:7) | (7:14)(8:1)(8:2) | sign (12:8)(12:9) |
| | prepared (2:25) | (8:4)(8:23)(11:7) | (15:10)(15:11) |
| objecting (3:18)(5:2) | pretty (16:17)(18:21) | (11:18)(11:24)(12:3) | (15:21)(16:20) |
| objection (9:9) | prevented (4:8)(5:22) | (12:16) | (16:21)(18:11) |
| objections (7:2) | preventing (13:24) | relief (12:6) | significant (15:7) |
| obviously (6:9) | (14:17)(14:24) | reply (3:19) | since (6:11) |
| (16:23) | previously (6:13) | REPORTED (1:22) | SINGHAL (1:9) |
| occurred (9:8) | prior (6:11) | Reporter (1:22) | situation (9:3)(15:8) |
| OFFICE (1:12) | privilege (10:15) | (19:17)(19:22) | six (5:21)(15:25) |
| officer (4:11)(7:16) | probably (11:9) | representative (7:15) | SMITH (1:12)(1:14) |
| (10:9)(13:3) | probation (4:6) | request (3:15)(4:12) | (2:7)(2:8)(2:11) |
| Official (1:22) | (4:11)(4:17)(4:22) | (6:18)(7:24) | (6:24)(6:25)(7:20) |
| (19:22) | (5:5)(5:6)(5:7) | requested (3:13) | (9:15)(12:4)(19:1) |
| often (3:13) | (5:14)(5:16)(5:25) | (13:19)(14:12) | (19:12) |
| old (4:5) | (6:7)(6:12)(7:15) | requesting (5:14) | social (13:8) |
| once (10:18) | (7:16)(8:8)(8:10) | (6:14)(13:23)(14:16) | society (8:21) |
| ones (9:12)(15:16) | (8:22)(9:1)(10:9) | respectful (5:6) | someone's (10:7) |
| only (7:7)(13:13) | (11:2)(11:4)(11:6) | response (7:1) | (11:25) |
| (14:6)(15:25) | (11:23)(13:3)(13:11) | restitution (11:20) | soon (15:19) |
| opposition (9:13) | (13:24)(14:3)(14:17) | restrictions (15:12) | South (1:23) |
| order (6:19)(6:21) | (14:24)(15:20) | (15:13)(15:24) | SOUTHERN (1:1) |
| (12:8)(15:20)(17:23) | (15:25)(17:1) | result (18:21)(18:23) | speak (7:18)(16:18) |
| (18:8)(19:3)(19:9) | probationers (11:18) | reward (12:21) | specifically (9:12) |
| orders (15:21) | problem (16:8) | rewarded (9:2)(9:4) | speech (9:24)(10:4) |
| originally (4:16) | proceedings (19:19) | Reynolds (2:8)(7:1) | spew (8:18) |
| our (4:25)(12:4) | Professional (19:16) | (15:20)(16:19)(18:3) | spoke (13:2) |
| (12:20) | prohibited (10:21) | rights (10:8)(11:11) | spoken (7:15) |
| outside (9:6)(13:16) | promote (14:25) | rises (5:10) | stand (2:19) |
| (13:19)(14:9)(14:12) | proof (4:19)(4:25) | room (15:3) | standby (7:17) |
| owe (11:20) | (6:10) | rules (16:6) | standing (2:8) |
| | properly (6:21) | run (16:19)(18:3) | state (4:9)(10:17) |
| **P** | (17:17) | | stated (3:25)(4:24) |
| page (9:13)(11:15) | | | |
| (17:19) | | | |

STATES                                                                    Zoom

**STATES** (1:1)(1:3)
(1:9)(1:23)(2:3)
(16:24)
**stating** (5:3)
**STENOGRAPHICALLY**
**stenographically-reported**
**step** (15:12)
**stints** (4:2)
**stipulation** (18:5)
(18:6)
**stress** (12:10)
**Suite** (1:13)(1:17)
**summarize** (7:3)
**superior** (9:6)
**SUPERVISED** (1:8)
(2:4)(7:9)(7:11)
(7:12)(7:14)(7:25)
(8:2)(8:4)(8:23)
(11:7)(11:18)(11:24)
(12:3)(12:16)
**supervision** (3:12)
(3:23)(10:7)(10:14)
(10:18)(11:11)
**supposed** (11:5)
**Supreme** (11:3)
**system** (10:17)(10:21)

**T**

**taking** (4:1)(4:19)
(5:1)(12:7)(13:11)
(14:4)
**talk** (3:5)(3:20)
(9:19)(10:16)(17:24)
(19:5)
**talking** (9:12)(11:4)
**taste** (14:22)
**termed** (12:17)
**terminate** (8:8)
(8:10)(8:22)(13:24)
(14:17)(15:25)
**terminated** (5:11)
(5:15)(5:17)
**terminating** (5:22)
**TERMINATION** (1:8)
(2:4)(3:12)(4:17)
(6:6)(6:12)(10:13)
(10:18)(10:22)
(11:22)(19:7)
**terminations** (11:1)
**terms** (3:16)(3:23)
(9:3)(10:25)(12:7)
(12:9)
**they'll** (13:3)
**thorough** (2:23)(2:24)
**though** (3:5)(10:24)
(12:5)
**thought** (3:21)
**three** (4:2)(17:10)
**threshold** (10:23)
**throughout** (5:24)
(6:11)(16:23)
**time** (3:7)(4:20)
(5:14)(5:18)(5:20)
(5:25)(6:11)(7:21)

(8:7)(8:17)(9:7)
(13:14)(14:7)(15:21)
(19:5)
**timeliness** (6:20)
**too** (2:16)
**top** (13:15)(14:8)
**totality** (8:6)(9:10)
**transcript** (19:18)
**travel** (4:12)(13:16)
(13:19)(14:9)(14:12)
(15:9)(15:11)(15:19)
(16:22)
**treatment** (12:12)
**true** (19:17)
**truly** (16:5)

**U**

**understanding** (7:17)
(7:21)(9:15)
**understands** (18:23)
**Understood** (6:16)
(6:23)
**unique** (14:21)
**UNITED** (1:1)(1:3)
(1:9)(1:23)(2:2)
(16:24)
**unless** (10:22)
**unlike** (16:9)
**unpredictable** (7:23)
**unusual** (3:15)
**uscourts** (1:24)
**usdoj** (1:14)
**user-friendly** (16:17)
**using** (11:6)

**V**

**versus** (11:12)(16:6)
**via** (13:7)
**videos** (8:16)(9:11)
(9:16)(9:17)(9:23)
(13:1)
**violate** (12:21)
**violated** (5:24)
(13:11)(14:3)
**violation** (10:11)
**violations** (5:5)
**violence** (10:1)
(14:25)
**vitriol** (8:18)

**W**

**Wait** (10:10)
**waiver** (2:22)(2:23)
**waivers** (2:23)
**wants** (3:24)(7:8)
(8:12)(8:14)(15:9)
**warrant** (10:10)
**watching** (9:18)
**week** (17:9)
**weeks** (17:10)
**What's** (3:21)(7:5)
(11:14)(17:18)
**while** (7:11)(11:23)
(11:24)(13:12)(14:5)

**whoever** (13:3)
**whole** (6:11)
**willing** (12:5)
(15:21)(15:24)
(16:21)(17:17)(18:11)
**within** (5:20)
**without** (10:10)(19:7)
**Word** (18:14)
**worry** (2:20)(3:4)
**worse** (5:20)(13:12)
(14:5)
**write** (19:7)
**wrong** (5:4)(5:24)
(11:12)(16:9)(16:10)
(16:11)

**Y**

**years** (4:5)(7:14)
(12:23)

**Z**

**Zoom** (3:8)

Shelly Kelley, CCR, RPR - Shamelle_Kelley@flsd.uscourts.gov